Good morning, Your Honors, and may it please the Court. My name is Mark Poe, and with Goldstein and Russell, we represent the plaintiffs in this appeal. I plan to reserve about three minutes for rebuttal, and I will keep my eye on the clock. This is a price discrimination case under the Robinson-Patman Act concerning the discriminatory pricing of five-hour energy in favor of the Costco chain and against these family-owned plaintiffs' businesses. The appeal involves three erroneous jury instructions concerning the issues of reasonable contemporaneousness and the defense of functional discounts. Importantly, all three of the erroneous instructions were framed as entirely dispositive of plaintiffs' claims, and they were the basis of two out of the three arguments against liability that defense counsel made in closing. Of course, I want Your Honors to please interrupt me with any questions, but my plan otherwise is to explain why it was error to instruct a jury on both issues and why the presumption of harmfulness is fully applicable here, which requires a new trial before a properly instructed jury. Beginning with the first, I trust that Your Honors understand the purpose of the reasonable contemporaneousness doctrine, and that's to ensure that the transactions that are being compared are close enough together in time that we can consider them similar transactions. Is it just time, or is it conditions made under the same conditions, because we don't have a specific definition of is a day too long, is a week too long? It's really whether they're made under the same conditions, isn't that right? Yes, that's exactly right, Your Honor. And so, for example And so what evidence did your client, did the wholesalers introduce to show that the sales were reasonably contemporaneous made under the same conditions? Well, so I would say, of course, the Exhibit 847 that we decided Well, you didn't introduce that, right? We did not introduce that, Your Honor. And so I understand. I'm very confused about this case. I may as well just say it. The Living Essentials introduced Exhibit 847, but apparently in an erroneous form in just five months of evidence, and then ultimately, and they introduced it to show market trends. And then they subsequently introduced it in the five-year version after the arguments on the jury instructions. And so far as we could tell, looking over the trial record, your client wholesalers never referenced Exhibit 847, never discussed it, never talked about it to the jury, never introduced it in any way. Is that wrong? Is there someplace in the record you could point me to? We did not introduce Exhibit 847 to the jury, Your Honor, but that's not exactly the issue. Of course, if an instruction should not come in, that's for the court to decide. Did you rely on it in any way in presenting evidence about reasonable contemporaneousness? I don't believe we did, but there was plenty of other. I mean, all of the evidence was presented on that issue by wholesalers. I only saw evidence presented by Living Essentials that it wasn't reasonably contemporaneous because of market factors. Well, so, for example, all of the trial exhibits that we've introduced in the third volume of the ER, 526 through 569, those are all discussions of reasonably contemporaneous sales where Living Essentials' own personal... Was there any evidence presented at trial? Well, all of those exhibits were presented at trial with testimony. OK, so which specific exhibit are you saying was presented at trial that argued reasonable contemporaneousness? Because I will go look at it. I mean, I didn't see anything in your brief other than this Exhibit 847, which was, and certainly was not introduced in the form you presented it on appeal. You presented us with an excerpted form of that exhibit, which was never at trial or introduced at trial in that form. I'm sorry, so I don't have the exact exhibit numbers, Your Honor, but there are 12 trial exhibits at 526 through 569, and you'll see that they are all discussing contemporaneous sales to the wholesalers and to Costco. I would further remind you that Dr. Williams' entire analysis is of reasonably contemporaneous sales. That's how he is purporting to conclude that there was no injury. So the issue, Your Honor, is that it really, it doesn't matter what came in and was described to the jury, because the jury should never have been instructed on reasonable contemporaneousness in the first place. I mean, so you don't dispute, as I understand it, that reasonable contemporaneousness was something you had to prove. Your theory is just, you know, it was so clearly proved that the jury could not have found it, not to have been proved, and therefore the jury should not have been asked to find it. Am I right? That's right. So then I guess I have the same question Judge Ikuta has been asking, which is, if you're going to say, you know, this was so clearly proved that the district court should not have given it to the jury, you know, where did you say to the district court, you know, look, here's an example of some reasonably contemporaneous sales? I mean, even if you had just pointed to one example of, you know, here are two on the same day or something like that. But I didn't see that you did that. Well, so in our, in our written objections to the instruction, of course, we, we observed that these sales happened over the entire six years, over the entire six year period without a document. But I think what your honors might be getting at is an issue under Civil Procedure Rule 51C about when a party objects to a jury instruction, they're required to state distinctly the basis for their instruction. Here, Living Essentials hasn't argued and Judge Marshall never claimed not to, never claimed to disagree, for example, with our objection that the sales happened continuously over a period of six years. And so, and we know, in fact, after we introduced Exhibit 847 in our JMAW and new trial order, that didn't move her. She was not moved by, by seeing thousands of transactions on a daily basis, all at the same time. Should that make a difference to us in considering whether the jury instructions were erroneous? It should, your honor, because this court should recognize that there was, in fact, no dispute that, no dispute that should have gone to the jury on that question. Would you move for under Rule 50, did you move to withdraw that issue from the jury by the judge before the jury instruction was given? Um, not under Rule 50, we objected to the giving of the instruction itself. But, do you think it's a requirement that you actually move for a judgment as a matter of law to take, because it is an element of your prima facie case, right? Reasonable contemporaneous. In fact, I would disagree with that, your honor. There are, there are typically four elements of an RPA claim. We can see this from Hasbrook, from Volvo, from J. Truitt Payne. They're typically considered interstate commerce, light grade and quality, discrimination in price that may adversely affect competition. I will further say, and this is at footnote three of our reply, all parties in the court relied on the ABA's manual. This circuit's civil guidance also directs parties, antitrust plaintiffs to the, to the manual. It lists eight potential elements for a Robinson-Patman Act claim, including things like, of course, interstate commerce. Was it a physical item? Was it for sale in the United States? But footnote one says, in most Robinson-Patman Act cases, there will be no dispute concerning many of the elements. The court should omit the undisputed elements and modify the listing to the actual elements. Could I get back to Judge Gilman's question on the burden of proof? Who has the burden of proof on reasonable contemporaneousness? And what case do you rely on for that? If it were properly in dispute, the plaintiffs would say. Okay, so it is your burden to carry. So Living Essentials presented some evidence that the sales were not reasonably contemporaneous. So why shouldn't that dispute go to the jury? I'm sorry. Living Essentials did not present any evidence the sales were not reasonably contemporaneous. They, they discussed market factors from which the jury could infer that the sales were not under the same conditions, which is part of the reasonably contemporaneous concept. So that the change in market conditions can be relevant to the issue, Your Honor. For example, in Texas Gulf Sulphur, where one transaction was entered into 17 months before the other transaction at a time when there was a different supply in the, in the Sulphur market. Therefore, that intervening market change can make them not reasonably contemporaneous. Here, there was no intervening market change. Okay. That's your argument, right? That's the argument you would make to the jury that the, the market changes were not intervening. Well, and as a matter of law, they, they, they could not be relevant because we have the exact same discrimination being practiced over the six years without regard to any market changes. I, I want to, I want to make one more point on reasonable contemporaneousness, Your Honor. Living Essentials on appeal points out that it is the, the date of the contract that is the relevant date for reasonable contemporaneousness. Now we've observed that these are thousands of spot transactions across time, all at the same discriminatory pricing, but they're only spot transactions in the, the amount, in the quantity ordered. The contract date, if there is one here, is the date of the price announcements to our clients and to Costco. And we can see from Judge, Judge Marshall's findings of fact and conclusions of law, those price announcements came out at the exact same time. So if it is a contract date that is relevant to the reasonable contemporaneousness requirement, footnote, which it is, in paragraphs 14 through 16, Judge Marshall explains that the first tier of pricing began both for plaintiffs in Costco in January 2012, and then January 14, 2019, it increased its list price to plaintiffs and Costco. These, the contracts were simultaneous, Your Honor. There, there was no gap in which there could be an intervening market change in which there could be some issue of seasonality. The, the problem with this instruction is that it, it pairs this abstract legal  any juror can understand, and so they can look at, well, there were new Costco business centers opening, and there was a decline in overall sales. Plaintiffs don't agree, don't dispute that, and so you must return a verdict for us. But the problem is, as I've been explaining, those, those market changes had no bearing whatsoever on the price, and there was no dispute. But you don't know whether the jury found against you on that basis or not. It may have been more of the functional discount. It certainly could have been the functional discount instruction, which, which was also described as fatal to our claims. But that's exactly the point on civil instructional error in this circuit, where we do not know the basis of the, of the jury's verdict, then the presumption applies. I'm going to eat a little bit into my rebuttal, Your Honor. To talk about functional discounts, there, the Supreme Court in Hasbrook, well, in the entire discussion of functional discounts begins with the predicate of the cost, the costs incurred by the recipient of those, of those discounts. I think living essentials, well, it admits at page 48 of its brief that it had adduced no evidence of the costs incurred by Costco or the savings to living essentials of, of averting those, those activities to Costco. And I think we would all have to agree that when there's no evidentiary predicate for an affirmative defense, that the jury should not be instructed with that affirmative defense that would allow a defense counsel to stand up in closing, point to the instruction and say, look, this means that you must return a verdict for the defense. I'm going to save my minute and 50 seconds, Your Honor. All right. We'll hear from the other side. Thank you, Your Honor. It's David Frederick for the defendants living essentials et al. The case really comes down to the standard of review. This is an unusual jury verdict case in that they waived their challenge to the sufficiency of the evidence, Judge Gilman. And so the only way they could challenge the instructions on appeal was to say there was no evidence to warrant giving them. They concede that the instructions are properly worded statements of law. So they're down to what I think is an abuse of discretion problem that the district court properly saw that there was evidence. In fact, he acknowledged in his opening argument that Dr. Williams had given evidence of no reasonably contemporaneous sales. So at that point, the issue is, do you give the properly worded instruction to the jury and let the jury decide it? Notably, the defendants asked for a more specific verdict, a special verdict form to get the jury to check whether it had found competition or reasonably contemporaneous sales per plaintiff. And they won the argument to get a general verdict. So if there's a problem that we don't know all of the specifics as to why the jury found on which issues, it's a problem that they invited. So as you review this case on appeal, I would submit that Judge Yakuta not withstanding all the complications of all the very specific points under the Robinson-Patman Act, it boils down to a very simple proposition. In this hotly contested trial, did both sides present some evidence? If they did, the district court was proper in giving the instruction and letting the jury decide it. What evidence did your client present of not being reasonably contemporaneous sales? Several pieces of evidence, and I would direct the court first to Dr. Williams' testimony. What Dr. Williams proved with an evaluation of 95,000 specific transactions and all 4,000 of the plaintiff's customers, that there was no price sensitivity with respect to any of the sales. He looked at all 74 periods in which Costco had given one of these coupons, and he determined that there was no Costco price effect. So his testimony was that there were no reasonably contemporaneous sales within the understanding and meaning of the Robinson-Patman Act, which of course is looking at whether or not the discrimination in sales injure competition. That's what the Supreme Court has said in the Volvo case. That is what this court has said in the Texas Gulf Sulphur case. And so it is important, Your Honor, to look at first, is there competition among the customers such that any price difference would actually have a switching effect? Would you switch from one seller to another seller on the basis of price? And he concluded after doing 112 different studies of all the prices, all the transactions in this period, that there was at most a tiny effect. And the tiny quote, which we cited in our brief, is also in the Supplemental Excerpts of Record Volume 2 at page 502. And so once he had shown that, then the question was, is this general gestalt evidence, the anecdotal evidence presented by the plaintiffs good enough? And the jury was persuaded that it wasn't. Excuse me, this seems to go more to the competition, the question of levels of competition, et cetera, for the district courts to eat denial of injunctive relief. What evidence was submitted directly by Living Essentials that the sales, assuming they were at the same functional level or the same competitive level, were not reasonably contemporaneous? So competition goes to both elements, Judge Yakuta, and I think it's important for the court to recognize that. If there is no competition among the customers, then any price discrimination will not violate the Robinson-Patman Act with respect to price discrimination under 2A and with respect to promotional payments and others that would be applicable under 2D. And so the judge's analysis at the 2D point in talking about the injunction explains exactly why the jury would have properly concluded that any price discrimination effect, any difference in pricing, would have had no effect in terms of contemporaneous sales. And notably, what never happened in this trial by the plaintiffs was to say on X date, there was this price, it was a differential price, and on that same date, we, our customers were discriminated against and had a different price as to a particular date. They try on appeal to bring in this Exhibit 847, and it is kind of mind-bendingly long, but notably in that exhibit, nowhere does the analysis in that spreadsheet actually go to the price differentials created by coupon discounts or other promotional activities. So you're only looking at list price and date. That doesn't even get them where they want to go. And Judge Ikuti, you're exactly right, that not only did they not introduce it, they didn't discuss it to the jury. The jury had no way of making sense of a document that was put in for a different purpose. And so we're here arguing on appeal about a document that had basically no bearing on the trial. And the evidence that was put in by the defendants through Dr. Williams conclusively determined that if the customers are not sensitive to price, they can't have a reasonably contemporaneous sales requirement. So I hear your argument and your theory of the case, but that's not what jury instruction 13 or 15 say. They're just doing a straightforward sales being compared. And so my question was very simple, taking aside, putting aside your theory of the case that you don't compare sales if they're at different levels of function, or maybe you're saying you don't compare sales if there is no evidence of injury to competition. I'm not sure. But that's not what these jury instructions are aiming at. So I'm just trying to find out whether there was evidence that was introduced by Living Essentials that would make it reasonable that what these jury instructions are getting at was in dispute. Yeah. Can I go back to the jury instructions, Your Honor, because I don't think that you've properly captured them. OK, if I could go to excerpts of record, page 40, the third point under the preponderance of the evidence standard is there is a reasonable possibility that the discriminatory pricing may substantially harm competition. That element was disproved by Dr. Williams' testimony. If you go to instruction 15, which they also go to, it is in terms of whether the sales being compared over the same time, you are also looking at whether market conditions change during the time between the sales. Dr. Williams talked about how there was a 36.8 percent, I think, decrease in the sales of five-hour energy during the six-year period. There was also the introduction in new inclusion of three Costco business centers. There were changes in condition where he described the wholesalers themselves were selling five-hour energy at different prices. In many instances, they would get the cheaper price at Costco and pocket the difference by selling them at the regular price that they were doing. That's why when Dr. Williams is testifying, he's talking about market conditions over the entire sweep based on analysis, a regression analysis of all 95,000 transactions in which this product had been purchased by the plaintiff's own customers. When in the closing, and this is what they're really complaining about, the went through the elements and said they didn't prove that. They didn't prove that these are done at the same time. They didn't prove that the market conditions were not dispositive. If you just look at the way many lawyers would try cases, they would look and ask the jury to go to the elements and say, was there evidence about this? We don't think there was. Did you hear from Dr. Williams? Yes, you did. Dr. Williams testified on these factors and that's why there was no harm to the sales may have occurred in a similar temporal timeframe doesn't answer the question under this court standard under Texas Gulf Sulphur, which is that you have to look at whether or not there was a specific sale. Could I ask you to address the functional discount issue and in particular, the instant rebate coupons where there's a payment to the customer? What is the function that Costco is performing that that's compensating it for? They, the first thing is they recognize that five-hour energy purchase for many customers is an impulse buy. And so the first thing that Costco did that benefited Living Essentials was the placement of the product during various periods. Fences is one of the categories. If you look at how Costco gets laid out, it will put fences. And if you put the product near a fence, it is going to increase the number of impulse buys. Placing it at the end of aisles. But there was a specific payment for the placement, right? Yes. And putting on the website, including it in their mailer, which went to 40 million people. The costs that were captured in this functional discount program, Judge Miller, really went to the increasing and augmenting of the five-hour energy brand that they were communicating to. That was a kind of functional distribution aid that the wholesalers were not engaging in. Because remember, their customers are other stores. They're not reaching the consuming public themselves. And so when the district court properly recognized that Costco is not sitting in the same position functionally as a wholesaler, it's sort of in a different position. Well, wait though, I thought that the Costco business centers, there was estimated that 90% of the customers at those business centers were, in fact, wholesalers. They were selling to the same convenience stores as the wholesalers. They were not the same convenience stores. That was one of the points. The convenience stores themselves, what Dr. Williams established, was that the wholesalers might take advantage of those cost discounts, but their customers were not. And that's why their customers were not switching between wholesalers and Costco in their purchases of five-hour energy. Now, on the 90%, that was another disputed issue at trial. And I would submit that there has been some, let's see, extravagance with the claim of 90% are only to the C stores. The undisputed evidence was that Costco sold to consumers, even through their Costco business centers. And so all of the various things that they were doing as a matter of function were benefiting the end consuming public. But we're talking specifically about the five-hour energy, 24 packs, right? Well, but you also, there was evidence, Judge Gilman, that Costco itself has a 48-pack energy shot. And so settling and focusing just on the 24-pack, I don't think is the right way to evaluate the problem, particularly when the jury heard evidence that the Costco does. So, I mean, I get that Costco's promotional efforts offer some benefits to living essentials, but what's the evidence that there was any relationship between the discount that was offered, and in particular, the IRCs, and any cost that Costco was incurring? Well, what, and this is what the judge found at ER page 36, was that Living Essentials had offered evidence that their competitors, Living Essentials competitors, were paying comparable amounts for advertising space to Costco. And that was a conclusion that the district court drew that the amount that was being paid by Living Essentials to Costco was a reasonable amount. If Living Essentials competitors are paying the same amount for basically the same kind of advertising and similar services, it is de facto reasonable as a charge, and the jury reasonably could have found that on the basis of the evidence. But again, Judge Miller, I think it goes back to, is this a fight in this court about the sufficiency of the evidence? No. It's a fight about whether or not there was any evidence that would justify a properly worded instruction to the jury. And once you see the case properly through the standard of review lens, which they really have nothing substantial to say, and he didn't say anything about it today, then you recognize that it is a relatively easy case, notwithstanding the fact that these Robinson-Patman Act claims get into the interstices of a lot of antitrust complications, and the cases can sometimes be somewhat difficult to fathom where they are. Now, if I could address briefly the injunction issue. The district court properly determined that the jury had found no competition and that competition was an element for a Section 2D claim. And once the judge had made that determination and backed it up with her own analysis of Dr. Williams' expert testimony, I think the case became relatively easy to Well, the judge inferred that there was no competition based on the jury's finding, but the jury may have just found no competitive injury. Well, the jury had to find competition before determining whether or not there was no competitive injury. And what the judge said was that, I confer that's where the jury was, but I independently look at Dr. Williams' testimony and I conclude that, in fact, he proved in the only systematic analysis that was done in the case. The other side did not try their case with a systematic economic regression using their data. We had to get their data and Dr. Williams analyzed that, scrubbed that, did the regression analysis on that. And that was the basis on which the court concluded that there was no competition. And if there is no competition, there can't be competitive injury. Unless the court has anything further, we'll submit on the briefs. All right. Thank you. Thank you for your argument. And you have a few minutes left for rebuttal. Thank you, Your Honor. Let me rebut a couple of points. First, my friend on the other side talks about Dr. Williams disputing reasonable contemporaneousness. That's just completely wrong. The reasonable contemporaneous requirement pertains to the sales from the supplier to the favored and the disfavored purchaser. There's not a word in Dr. Williams' analysis about that, nor any site in their brief that Dr. Williams raised an issue, a legitimate issue of dispute about reasonable contemporaneousness. Second, my friend says that the form or the verdict should count against us. That just has no bearing in any of the circuit's precedent when we're reviewing for instructional error. On Williams' opinion, I'll point out to you, this was in our briefs of course, but he did not actually opine that plaintiffs in Costco do not compete. His opinion was that plaintiffs had not suffered and what he called an economically significant loss of customers. The rule on competition is different. It's set forth in Texas Gulf Sulphur, which cites tri-valley packing. It says customers in the same geographical area who buy the seller's products of like grade and quality within approximately the same period of time are in actual competition with each other. Dr. Williams' opinion is only against competitive injury. We know here that the jury did not reach the injury question because that was question two on the verdict form. Judge Miller, you asked about the IRCs. You're exactly right. They can't conceivably be functional discounts because they were entirely passed through to Costco's customers. Well, just because the check goes to the customers, I mean, Costco could raise the prices to compensate for them. So it doesn't follow that the economic benefit doesn't go to Costco, does it? Well, but Costco did not raise the price. That was only a reduction on its list price to account for that. Moreover, I mean, two other things. There is no evidence of any function that Costco performed related to the IRCs. And secondly, there's no evidence of any cost of administering the IRCs, which is the predicate for the defense. The very last thing that I'll say is that, of course, this is not a matter of substantial evidence. We're not here reviewing a J-Mall verdict. We're here on instructional error. Where these two instructions were erroneous and we don't know on which the jury based its verdict, the law is that plaintiffs are entitled to a new trial for a properly instructed jury. Thank you, Your Honors. All right. The case of U.S. Wholesale Outlet and Distribution versus Innovation Ventures and Living Essentials is submitted.
judges: Gilman, IKUTA, MILLER